Young v. Young.

JOHN H. YOUNG v. J. M. YOUNG et al.

1. CHANCERY PLEADINGS AND PRACTICE. *Sale of land to pay debts.* A decree ordering the sale of lands of a defendant to pay debts, reciting that the estate of the deceased "is largely indebted, that its indebtedness amounts to —— dollars, or more," and based on a report that does not show the amount and value of the assets received; the amount of *bona fide* debts outstanding; the names of the creditors. and to whom the debts should be paid, is *void*.

2. ESTOPPEL. A minor purchasing fifteen acres of the lands of the deceased, from one who purchased part of the lands at the sale under such decree, will not be estopped to set up his rights as to the balance of the lands sold under such decree, of which he did not become the purchaser.

FROM PUTNAM.

Appeal from the Chancery Court at Cookeville. W. G. CROWLEY, Ch.

VERTREES & VERTREES, E. L. GARDENHIRE and R. A. COX for complainant.

DILLARD & SWOPE, MARCHBANKS & SPURLOCK and J. A. NESMITH for defendants.

COOKE, Sp. J., delivered the opinion of the court.

This bill was filed to set aside a decree and sale by the chancery court of certain lands described in the bill on account of fraud and the want of juris-diction in the court to decree the sale. Allen Young, the father of respondent, J. M., and John H. Young, Sr., the putative father of the complainant, whom he had legitimated, were brothers and partners in business. Allen Young owned in his undivided right a tract of land. John H. also owned individually three different tracts, and the partnership owned some three other tracts. Allen Young died, and the respondent J. M., became his administrator, and filed a bill against John H. Young and the other heirs of Allen Young, deceased, apparently for the purpose of selling the tract of land that was owned by Allen Young, and also the partnership lands for the purpose of paying debts of the estate, and for partition of the partnership lands. Pending this bill John H. Young died, and the respondent, J. M., also became *his* administrator, and filed a bill against certain persons whom he alleged to be the heirs-at-law of his said intestate, John H. Young, he never having been married, for the alleged purpose of selling the lands belonging to his estate for the purpose of paying debts, etc. He also caused the case of himself, administrator, etc., of Allen Young, deceased, to be revived *against* himself as administrator of John H. Young, deceased. Said two causes were consolidated, after which he filed an amended bill by which he

sought to make the complainant, who was then a minor of about sixteen or seventeen years of age, a defendant to both suits, alleging that he had discov-ered recently that said complainant had been legiti-mated by 'John H. Young in his lifetime, and that he was his only heir-at-law. Subpœna to answer was served upon him, and what purports to be his answer by a guardian *ad litem* appears in the record, it not being endorsed as having been filed, nor anv thing to show the date at which it was filed, nor is there any record showing that a guardian *ad litem* was appointed for him. The deposition of the party who assumed to answer for him was, however, taken, who testifies that he was appointed guardian *ad litem* for said minor by the chancellor, and that the solicitor of respondent J. M. Young, who was complainant in that proceeding, prepared the answer by his request, and that he either filed it or gave it to complainant's solicitor to file. Such proceedings were had that a decree was procured to sell the whole of said lands, which was done, and the complainants became the purchasers.

The Referees have made an elaborate and exhaus-tive report, in which they review the entire proceed-ings, and from which they report that the decree was not only fraudulently procured by the respondent, J. M. Young, but was absolutely void for want of jurisdic-tion. The facts reported by the Referees upon this branch of the case are in the main unexcepted to, and the evidences of the fraudulent procurement of the decree upon the part of the respondent, J. M. Young, so abundant that it is virtually conceded on part of

the respondent that the report upon this branch of the case is correct. Hence it is unnecessary to discuss this part of the report.

It is, however, insisted that notwithstanding the fraudulent conduct of the respondent, J. W. Young, in procuring the decree under which the land was sold, yet the other respondents being mere purchasers at the sale, and not connected with it in any way are not affected by such fraud. This · is unquestionably true, and unless the decree was void, they cannot be disturbed in their purchases.

By section 2268 of the Code, before making such decree (to sell land to pay debts) it shall be made to appear to the satisfaction of the court that the personal estate has been exhausted in the payment of *bona fide* debts, and that the debts or demands for which the sale is sought are justly due and owing, either to the creditors or to the representative, for advances out of his own means to pay just demands against the estate.

On the 22d of October, 1877, the chancellor made the following interlocutory order: "This cause came on to be heard upon bill, answers, judgment *pro confesso*, and when it appeared to the court that J. H. Young is dead; that complainant is his administrator. It also appears to the court that said estate is considerably indebted, and that the personal assets of said estate are insufficient to pay off said indebtedness. It further appeared to the court that complainant's intestate died seized and possessed of several small tracts of land, and that he owned one-half interest in some

other land with his brother, Allen Young, who is also
dead, and that all those named in the pleadings are
their heirs-at-law, but it not appearing to the court
what amount said estate is indebted, nor what amount
of assets have come or may come into the hands of
said administrator, it is ordered by the court that an
account be taken touching those points, and report to
present term of this court." Following which in the
transcript, but without date or indorsement showing
when the same was made, or that it ever was filed,
is the following report: "In this cause the clerk
and master reports, under an interlocutory decree here-
tofore made in this cause that the personal assets of
the estate of said J. H. Young, deceased, so far as are
shown from the pleadings and otherwise amount only
to $14, and that indebtedness of said estate amounts
to about the sum of $2,060, and probably there are
still others outstanding against said estate not yet re-
ported, all of which is respectfully submitted to the
court," and which is signed by the clerk and master.
Then follows the decree of sale, which is in these
words: "Be it remembered that this cause came on
further to be heard by the court upon bill, answers,
judgment *pro confesso*, and report of the clerk and
master, from which it appears to the satisfaction of
the court that the estate of J. H. Young, deceased,
is largely indebted, that its indebtedness amounts to
—— dollars or more, and that the personal assets
amounts only to the sum of about —— dollars. It
is therefore decreed by the court that the lands both
undivided and partnership lands described in the plead-

ings in this cause be sold to pay the debts of said estate by the clerk and master upon one and two year's time, except the sum of $20 upon each tract, to be paid down, upon publishing said sale as required by law, to be sold at the former residence of J. H. Young, deceased, and in such lots as the said administrator and clerk and master shall deem most to the interest of said estate, and report to the next term," etc.

It is .thus seen, that there was not a single specific *bona fide* debt ascertained or reported to be due to any specified creditor or other person in the whole record. Nor is there in the record a particle of evidence of any kind upon which said report was predicated, even if it is assumed to be the report of the master made in obedience to said interlocutory decree. It is therefore palpable, that the positive requirement of the statute above cited, to give the court jurisdiction, was not in fact complied with. To give the court jurisdiction, a substantial conformity to all the requirements of the statute must be executed: *Dalles* v. *Read*, 6 Yer., 53; *Kendall* v. *Titus*, 9 Heis., 727.

But as now holden by our more recent decisions, when the bill or petition alleges the facts required by the statute, and the decree states them to have been made out to the satisfaction of the court, and assumes them as its basis and the ground of the sale, in a collateral proceeding attacking the sale for the want of jurisdiction, neither the evidence on which the court acted nor the correctness of its conclusion can be investigated by an inferior court. The facts stated in the bill or petition and the decree alone can be looked

to, to test the jurisdiction of the court: *Kendall* v.
*Titus, supra*. If a decree for the sale of land be
void for failure to show upon its face the court was
warranted in rendering the same, or the pleadings are
insufficient to prefer jurisdiction, the sale may be in-
validated by a collateral proceeding: *Starkey* v. *Ham-
mer*, 1 Baxt., 438.

It is evident, at a glance, that this decree does not
assume the facts necessary to give the court jurisdiction
to sell the land, neither the pleadings, proof, report or
decree allege, show or assume a state of facts neces-
sary to give the court jurisdiction, and hence, we must
hold that the decree was void on its face, and the
purchasers acquired no title under it.

The complainant, although a minor, attended the
sale and bid upon some of the lands. After the sale
he purchased—while still a minor—a few acres, about
fifteen, off one of the tracts thus sold, from the pur-
chaser at the sale and sold it back to him after he
had attained his majority. After the sale there was
another account of the indebtedness of said estate ordered,
and a considerable amount of indebtedness reported against
it. After this, as well as exorbitant allowances for ser-
vices, fees, etc., had been decreed to be paid out of
the fund, there seems to have been a residuum left of
about $500, an order was made to loan, this and that
complainant should have the preference, and this amount
was either paid over to him or loaned to him under
said order, it is not very certain which; at any rate,
he received into his hands this $500 of the proceeds
of said sales, and it is insisted that by these acts he

is estopped from questioning the validity of these sales. There is nothing in this position. To constitute an estoppel *in pais* the act must be done deliberately, not unadvisedly or hastily: 2 Hum., 270; 5 Hum., 299. The doctrine can only apply where some declaration is made or act done to influence the conduct of another in his dealing, and which actually leads him into a line of conduct which must be prejudicial to him, unless the party so misleading him be cut off from asserting a conflicting right: 3 Sneed, 374; 1 Tenn. Ch., 294; 11 Lea, 651.

There can be no question from the facts and circumstances of this cause, that the complainant acted in all these matters in ignorance of his rights, and that he asserted them as soon as he was properly advised. in regard to them, and there can be no pretense that any of the parties were misled by any act of his.

The Referees report that the decree of the chancellor should be reversed. The decree of sale of said land declared void and the sale set aside, as well as all the allowances for fees and costs, so far as paid out of the estate of John H. Young, deceased, except costs of the clerk and master and other officers of the court. That the purchasers be entitled to a decree for such portions of the payments made by them upon their respective purchases, as were actually paid upon *bona fide* debts of the estate of John H. Young existing at the time of such payments, and such sums declared a lien · upon the lands respectively purchased by them. That the alleged debt of $830 to J. M. Young, administrator of Allen Young, nor the debt to the branch

Bank of Tennessee at Sparta, for which John H. Young was only endorser and Allen Young principal, will not be treated as valid debts against the estate of J. H. Young, deceased. Nor is the costs, fees, commissions and compensation allowed to the administrator, J. M. Young, out of the estate of J. H. Young, deceased, a *bona fide* debt against said estate. Purchasers will be allowed interest on such sums as were applied in the payment of valid debts against said estate. They will be allowed for permanent improvements or betterments, and will be charged with reasonable rents. Complainant must account for $500 received by him with interest, and will be estopped from recovering the fifteen acres purchased from and sold back to respondent Sparks. The cross-bills will be dismissed and the costs of the same in this and the chancery court will be paid by the complainant, and the costs of the original bill in this and the chancery court will be paid by the respondents. The cause will be remanded to be proceeded in as herein directed. This indicates the relief we think proper to be granted. The exceptions will be overruled, and the report of the Referees in all respects affirmed, and decree entered accordingly.